OPINION OF THE COURT
Seymour Schwartz, J.
In this holdover proceeding petitioner, Plaza Operating Partners Ltd. (Landlord), owner of the Plaza Hotel at Fifth Avenue and 59th Street, New York City, seeks possession of *697 the dress shop operated by respondent, Maison Mendessolle, Ltd. (Tenant), pursuant to lease, use and occupancy in the sum of $35,000 from August 1, 1988 and attorneys’ fees. Tenant counterclaims for a lease buy-out payment of $8,136,317 pursuant to paragraph 6 of the first amendment to the lease.
Landlord moves here to strike Tenant’s affirmative defenses of (1) invalidity of the termination of lease letters, (2) failure to make the buy-out payment, and other assorted defenses not seriously raised. Landlord also seeks to sever the counterclaim and strike the demand for a bill of particulars.
On December 30, 1977 Tenant executed a lease with Landlord’s predecessor, Western Hotels Company (New York), Inc. (Western), to terminate on August 31, 1983. On October 28, 1980 Western and Tenant executed an amendment to the lease which, inter alia, extended the term to August 31, 2003 and added a clause to terminate the lease upon notice of a Landlord sale and further provided for a buy-out payment to Tenant in that event.
In 1982 Western amended its name to New York Westin Hotel Company (Westin).
On January 29, 1988 Westin sold a five-sevenths interest in the Plaza Hotel to RMB Plaza Partners, Ltd. (RMB), retaining two sevenths. Thereafter Westin, RMB and Group Management Partners, Ltd. (Group Management), RHB’s general partner, found a partnership, Plaza Operating Partners Ltd. (Plaza Operating). On March 25, 1988 Westin, RMB and Group Management entered into a contract of sale for a 100% interest of the general and limited partnership interests to Aoki Corporation (Aoki) and Aoki America, Inc. (Aoki America) which contract was then immediately assigned to Donald J. Trump and DJT Plaza Hotel Corp. (DJT). On July 21, 1988 Westin, RMB and Group Management transferred ownership to Plaza Operating.
On May 17, 1988, a notice of termination of lease was served on behalf of Westin, Plaza Operating and RMB in their capacity as Landlord. Group Management executed the notice on behalf of Plaza Operating and RMB.
Paragraph 6 of the first amendment to the lease dated October 28, 1980 between the prior landlord, Westin, and Tenant provides: ”[I]n the event landlord determines in its sole discretion to demolish or sell the hotel * * * then landlord may terminate this lease by giving tenant not less than *698 sixty (60) days notice in writing of the date on which this lease shall terminate * * * [t]hen landlord shall pay to tenant on the date the term ends an amount equal to * * * plus the cost of discontinuing tenant’s business with respect to the premises: (including but not limited to all losses, if any, upon the disposition of inventory and trade fixtures in a commercially reasonable manner) * * * tenant will notify landlord of such costs within a reasonable time after they become known and such costs will be determined in accordance with generally accepted accounting principles.”
Briefly stated, Tenant contends that its lease was not terminated because the Plaza Hotel was not sold to petitioner Landlord Plaza Operating and in addition that the lease termination clause was not a conditional limitation automatically terminating the lease upon notice but a condition subsequent to actual payment of the lease amount on the date the term ends. This condition of payment is sometimes described as a condition precedent for the purpose of legal analysis in contradistinction to a conditional limitation.
In Matter of Miller v Levi (44 NY 489, 495) the court described how a conditional limitation operates: "Immediately upon sale by Miller and notice thereof to the tenant, the limitation attached to the estate of the latter, without further act on the part of Miller. There then arose a limitation of his term, to wit, its expiration on the 1st of May following. The act itself, in the lease contemplated, to wit, a sale with notice, created the expiration. Nothing further was necessary.”
Tenant contends that there was no sale of the Hotel Plaza to trigger a notice of lease termination pursuant to paragraph 6 of the first amendment to the lease since the same Landlord entity, Plaza Operating, remained as owner both before and after July 21, 1988 when Trump interests took over. Tenant contends that the transfer of all the underlying general and special partnership interests from one group of principals to another is insufficient to warrant the label of sale under the lease because the selling and purchasing legal entities must be different.
At issue is the interpretation of the provision of paragraph 6 of the first amendment to the lease which provides "[i]n the event landlord determines in its sole discretion to * * * sell the hotel”. The condition and its language was negotiated and agreed to by a sophisticated Landlord and Tenant. The phrase must be given the common contract meaning and usage those *699 businessmen intended. The court is not restricted to a statutory definition of sale as, for example, Uniform Commercial Code § 2-106. In our sophisticated economy transactions are usually shaped to maximize tax benefits, avoid transactional and filing fees and provide for ease and flexibility of management and operation. Before deciding rights and obligations the economic realities of the transaction must be analyzed to understand the underlying purpose and goal. Only then can the court affix the label from which rights and obligations flow.
A formal closing was held on July 21, 1988 where deeds were transferred. The sellers and purchasers were completely separate and unrelated with different economic interests and goals. A consideration of hundreds of millions of dollars was paid to obtain ownership of the Hotel Plaza and there is no suggestion that the transfer was tailored to trigger the lease termination clause. In United Hous. Found, v Forman (421 US 837) the Supreme Court of the United States held that stock issued by a housing cooperative was not a security within the purview of the Securities Act of 1933. In so holding, it emphasized: " 'form should be disregarded for substance and the emphasis should be on economic reality’ ” (supra, at 848).
At the time of the first amendment to the lease a lease termination clause was freely negotiated by the parties and its consequences were understood and foreseen by them. Following the closing, new principals who had paid old principals monumental consideration took over the hotel and installed new management and control. In economic terms and in common parlance, this was a sale.
The May 17, 1988 lease termination notice provision acted as a standard conditional limitation which automatically terminated the lease upon sale of the Hotel Plaza. Payment on the precise date the term ended was not a condition precedent since a practical reading of the termination clause demonstrates that Tenant could not comply with the accounting provisions of the lease until business ceased. While the language speaks of payment "on the date the term ends”, Landlord could not do so because the cost of discontinuing the business and all losses, if any, upon the disposition of inventory and trade fixtures in a commercially reasonable manner could not be established until after lease termination and only then through Tenant’s actions. Tenant then has the obligation to "notify landlord of such costs within a reasonable time after they become known and such costs will be determined in *700 accordance with generally accepted accounting principles.” A forced reading which would require payment on the precise date the term ends would permit Tenant to arbitrarily set any price in exchange for possession no matter how divorced from reality and force Landlord to pay a premium or penalty leaving it at risk to later attempt to recover from a tenant no longer in possession and doing business.
A similar problem arose in Matter of Coatsworth (160 NY 114) and the same conclusion was reached. The lease contained a conditional limitation clause which allowed the termination of the lease upon notice and provided: "[A]t the expiration of the term * * * [landlord] will pay [tenant] * * * the value of the said buildings that may then be standing upon said demised premises” (supra, at 117). Tenant refused to vacate without payment. The trial court held payment was not a condition precedent and issued a warrant of eviction. The Court of Appeals affirmed without prejudice to any future action or proceeding. The court observed that the amount could not be ascertained before the termination of the lease because an appraisal by three disinterested parties was necessary to determine value and held that payment was not a condition precedent to lease termination.
The court has reviewed the other defenses and arguments and finds them without merit.
Tenant’s affirmative defenses are stricken, the counterclaim is severed and the demand for a bill of particulars is stricken.